UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PETER RYAN BEERS,** : | |
| **Plaintiff** : | |
| : | CIVIL ACTION NO. 3:12-2129 |
| v. : | |
| : | (JUDGE MANNION) |
| **CAROLYN W. COLVIN,**[1] : | |
| **Acting Commissioner of the** | |
| **Social Security Administration** : | |
| **Defendant** : | |
| : | |

**M E M O R A N D U M**

The record in this action, (Doc. No. 8), has been reviewed pursuant to 42 U.S.C. §405(g) to determine whether there is substantial evidence to support the Commissioner's decision denying the plaintiff's claim for Social Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§401-433, 1381-1383f.

**I. PROCEDURAL BACKGROUND**

Plaintiff Peter Ryan Beers protectively applied to the Social Security Administration ("SSA") for SSI and DIB under the Act on December 28, 2009. (Tr. 108-109). Plaintiff's application was denied on March 29, 2010. (Tr. 58-

---

[1] On Febraury 14, 2013, Carolyn Colvin became acting Commissioner of Social Security. Pursuant to Fed.R.Civ.P. 25(d), she has been substituted as the defendant.

69). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on April 7, 2011 in Scranton, Pennsylvania, with plaintiff appearing from Maryland via teleconference. (Tr. 30-57). Plaintiff was represented by counsel. (Id.). In addition to plaintiff's testimony, (Tr. 35-52, 54-57), the ALJ heard testimony from a vocational expert ("VE"). (Tr. 52-54). On June 13, 2011 the ALJ determined that plaintiff was not disabled within the meaning of the Act. (Tr. 15-29).

Plaintiff requested review of the ALJ's decision by the Appeals Council. (Tr. 12-14). On August 28, 2012, the Appeals Council denied the request for review. (Tr. 1-4). Thus, the ALJ's decision became the final decision of Commissioner. 42 U.S.C. §405(g). Plaintiff filed the instant appeal of the Commissioner's decision on October 24, 2012. (Doc. No. 1). The parties have filed briefs in support of their respective positions. (Doc. Nos. 9, 10, 11).

## II.  STANDARD OF REVIEW

When reviewing the denial of disability benefits, the court must determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Johnson v. Commissioner of Social Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552 (1988); Hartranft v. Apfel,

181 F.3d 358, 360. (3d Cir. 1999); Johnson, 529 F.3d at 200. It is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if [his] physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [he] lives, or whether a specific job vacancy exists for [him], or whether [he] would be hired if [he] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §423(d)(2)(A).

### III. DISABILITY DETERMINATION PROCESS

A five-step process is required to determine if an applicant is disabled under the Act. The Commissioner must sequentially determine: (1) whether the applicant is engaged in substantial gainful activity; (2) whether the applicant has a severe impairment; (3) whether the applicant's impairment meets or

3

equals a listed impairment; (4) whether the applicant's impairment prevents the applicant from doing past relevant work, and; (5) whether the applicant's impairment prevents the applicant from doing any other work. 20 C.F.R. §§404.1520, 416.920.

## IV.   THE ALJ'S DECISION

Using the above-outlined procedure, the ALJ determined that the plaintiff met the insured status requirements of the Act through December 31, 2013. (Tr. 18-26). She found that while plaintiff has worked on personal design projects since his alleged onset date of June 6, 2008, he has not received payment for this work that rises to the level of presumptive substantial gainful employment. The ALJ found that plaintiff has severe impairments consisting of bipolar affective disorder and anxiety disorder. The ALJ declined to find that plaintiff's history of alcohol abuse is severe, because it does not limit plaintiff's ability to perform work activity. The ALJ also declined to find that plaintiff's history of rhabdomyolysis[2] is severe for the same reason. The ALJ noted that she took the plaintiff's obesity into consideration at disability determination steps 2-5, as required by SSR 02-01p.

The ALJ found that plaintiff's bipolar affective disorder and anxiety

---

[2]Rhabdomyolysis is a disease that causes the breakdown of muscle fibers, leading to the release of myoglobin into the bloodstream. (Tr. 34, 50).

4

disorder did not meet or medically equal the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ found that plaintiff had the residual functional capacity ("RFC") to perform light work, and that he is limited to work with no detailed instructions, involving simple and routine tasks in jobs that are self-paced in nature, providing no more than limited contact with the public and co-workers, and with few work changes. The ALJ's decision additionally notes that claimant is unable to perform past relevant work, and that he was thirty-four years of age on his onset date, making him a "younger individual" under the regulations. She found that plaintiff has a high school education and can communicate in English. Finally, she determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform given his age, education, work experience, and RFC. Thus, the ALJ found that plaintiff had not been under a disability as defined by the Act from June 6, 2008 through the date of her decision.

**V.     EVIDENCE OF RECORD**

Plaintiff has alleged disability since June 6, 2008. The evidence of record establishes that plaintiff was thirty-four years of age at the time of alleged disability onset. Plaintiff completed high school and two years of college (Tr. 147). Plaintiff attempted to go to college twice, but was unable to finish, despite using special services, because it is "to[o] much for me to handle." (Tr. 147).

Plaintiff first sought treatment for mental health issues in 1997. (Tr. 144).

Dr. Ilan Levinson treated plaintiff for his mental health issues from 1997 through 2008. (Tr. 144, 202-213). He monitored plaintiff's medications and met with patient approximately monthly for counseling. (Tr. 144). In 1998, plaintiff was hospitalized for ten days for his mental health issues. (Tr. 144, 149). Dr. Levinson's treatment notes reflect that plaintiff suffered from bipolar disorder, and consistent anxiety. (Tr. 202-13). Dr. Levinson's notes through November 5, 2007 also indicate that plaintiff suffered from alcohol dependency and polysubstance abuse. (Tr. 202-13). Plaintiff spent a month in jail as a result of a second arrest for DUI. (Tr. 48). He then went to inpatient alcohol rehabilitation. (Tr. 48). At the time of his hearing, plaintiff was in the middle of an outpatient alcohol treatment program. (Tr. 39, 47).

Plaintiff takes several medications for his bipolar disorder, including Cymbalta and Hydroxyzine. (Tr. 41, 232). He used to take Ambien, to help with the lack of sleep that occurs during his manic periods. (Tr. 44). He has stopped taking Ambien, and is attempting to treat his sleep issues with exercise, a healthier diet, and having a regular daily regimen instead, but plaintiff testified that the regimen has not worked very well, and that during manic periods he gets as little as two hours of sleep a night. (Tr. 44).

Plaintiff receives treatment at Lehigh Valley Community Mental Health Centers. (Tr. 144-45, 214-31). There, he continues to see Dr. Enrique Lirag, a psychiatrist, approximately monthly. (Tr. 14-31). Dr. Lirag monitors his medications and offers counseling. (Tr. 144, 214-31). Plaintiff also sees

Thomas Miller, M.A., a psychologist, for weekly counseling. (Tr. 144-45, 313-25). Plaintiff and his fiancee have occasionally attended couples therapy with Mr. Miller to discuss tensions in the relationship, some of which stem from plaintiff's mental health issues and inability to maintain employment. (Tr. 321). Plaintiff also sees Dr. Brooks Betts, D.O., at Muhlenberg Primary Care. (Tr. 144, 232-39). He sees Dr. Betts for high blood pressure and cholesterol, as well as rhabdomyolysis treatment. (Tr. 34, 144).

Plaintiff testified that his pain from the disease is consistent, and that it has become harder to work through as he ages. (Tr. 50). He gets blood work every two months, and sometimes more frequently, to monitor the disease. (Tr. 50-51). He testified that "very, very low physical activities and work," better diet, and staying hydrated are how he deals with his rhabdomyolysis. (Tr. 51). Although he tried pain medicine, he has stopped taking it because it interferes with the medication he takes for his bipolar disorder. (Tr. 51). The medical evidence of record reflects that plaintiff goes for frequent diagnostic testing. (Tr. 271-312). Dr. Betts' records reflect that plaintiff had back and joint pain, but do not explicitly tie that pain to rhabdomyolysis. (269-70). Dr. Levinson noted on October 26, 2006 that plaintiff suffers from the disease. (Tr. 213). The medical evidence of record does not otherwise reflect treatment for or complaints regarding rhabdomyolysis. Plaintiff does not see a specialist for his rhabdomyolysis. (Tr. 34).

Dr. James Cunningham, Ed.D. a state examiner, reviewed plaintiff's

medical record in performing a psychiatric review and mental RFC on plaintiff on March 29, 2010. (Tr. 246-263). Dr. Cunningham concluded that plaintiff has the medically determinable impairments of bipolar disorder and anxiety disorder. (Tr. 251, 253). He found that plaintiff has mild restrictions in the activities of daily living and in maintaining social functioning. (Tr. 258). He found that plaintiff has moderate difficulties in maintaining concentration, persistence, and pace, and had experienced one or two episodes of decompensation of extended duration. (Tr. 258). Dr. Cunningham found that plaintiff has moderate limitations in his ability to perform within a schedule, maintain regular attendance, and be punctual. (Tr. 261). He noted that plaintiff has moderate limitations in his ability to accept and respond appropriately to criticism from supervisors and react to changes in work setting. (Tr. 262). Dr. Cunningham erroneously noted twice that plaintiff has no history of psychiatric hospitalization. (Tr. 260, 263). Dr. Cunningham found plaintiff's statements regarding his limitations to be partially credible, and determined that he can work in jobs requiring little independent decision making. (Tr. 263).

Plaintiff has held many jobs for short durations. (Tr. 142, 153). The longest job he held was at a lawn service company, for approximately three or four years. (Tr. 142). Plaintiff testified that he was able to keep the job so long because the owners of the business were his friends, and they allowed him to take unscheduled breaks throughout the day. (Tr. 50). Eventually, they were unable to keep extending plaintiff accommodation for breaks and time off, and

he lost the job. (Tr. 50). Plaintiff attempted to work a temporary job in October of 2010 with a construction crew running machines. (Tr. 37). He tried the part of the job that involved lifting for one day, and was unable to do it. He ran a machine with the crew for a week and a half. (Tr. 37). He was let go from a job as a furniture store manager in 2008 because he was unable to perform the job. (Tr. 37-38). He testified that his bipolar disorder makes it difficult for him to complete tasks consistently. Sometimes he can work quickly, while during depressive periods it "takes forever" to complete the same tasks. (Tr. 41). Plaintiff testified that his problems with sleep and his manic and depressive episodes make it very difficult to maintain employment. (Tr. 41,44, 56). He testified that he can only keep a job for four to six months before his mental issues result in "constant failure." (Tr. 55-56). Plaintiff received unemployment compensation until early 2011. (Tr. 35-36).

    Plaintiff testified that his "ultimate goal" is to make himself self-reliant and in control of his own schedule by creating illustrations, partially done by hand and partially by computer graphics. (Tr. 42). He testified that he has tried working on a regular work schedule for years and "it just doesn't work." (Tr. 43). Although he spends four or five hours a week working on his computer graphics skills, he testified that he is too inefficient to make it a business. (Tr. 40, 43). While he has been able to receive a little bit of cash for completing small projects for family and friends who know he needs help, and who are forgiving and patient of him, he has been unable to work for people he doesn't know. (Tr.

40-43). They are not as forgiving regarding timelines, and they lose patience with the plaintiff. (Tr. 43). Plaintiff testified that when he is on a deadline, he becomes so anxious that it makes it difficult to complete a project. (Tr. 44).

Plaintiff testified that he does not go out with his fiancee or visit friends. (Tr. 46). He testified that his depression keeps him from social activities, and that he has missed a large number of family holidays over the years. (Tr. 47). He forced himself to attend his nephew's first birthday party. (Tr. 47). Plaintiff testified that he is trying to put more effort into helping with household chores like cooking and laundry, although he has difficulties with motivation. (Tr. 48-49). He said that house work is not mentally or physically taxing, while he is physically unable to do yard work. (Tr. 48).

> The ALJ heard VE testimony at plaintiff's hearing. The ALJ asked the VE,
>
> "begin by assuming that we're talking about an individual of this claimant's age, education, and past work history. Further assume the individual's capable of performing a range of light work, does not involve detailed instructions; and is confined to simple and routine tasks that are self-paced in nature; with limited contact with the public and coworkers and few work changes."

(Tr. 53). The VE testified that an individual with those limitations could work in assembly, folding, and hand-packing occupations. (Tr. 54). Plaintiff testified that he didn't think he would be able to do the jobs listed by the VE because they sounded like "rapid-fire" jobs and "assembly-line stuff." (Tr. 54). He testified that it hurts his arms to do repetitive motions like those suggested by the VE, and that his inability to keep a job for any significant amount of time would prevent

him from doing the jobs. (Tr. 54-55). He further testified that "I just keep trying to do stuff," but that it never results in successful employment. (Tr. 56).

## VI.    DISCUSSION

Plaintiff appeals the decision of the Commissioner on several grounds. First, he argues that the ALJ's decision to give substantial weight to Dr. Cunningham's assessment is not supported by substantial evidence. Second, he argues that finding plaintiff's rhabdomyolysis to be non-severe was not supported by substantial evidence. Finally, plaintiff contends that the Commissioner did not establish that there is work in the national economy that plaintiff is capable of performing.

A.    Dr. Cunningham's Assessment

Plaintiff contends that the ALJ gave improper weight to Dr. Cunningham's opinion which erroneously stated that plaintiff had never been hospitalized for psychiatric reasons. The ALJ's opinion does not address the evidence that plaintiff was hospitalized for ten days in 1998. Plaintiff contends that this indicates that the ALJ did not take the entire record into account, and  failed to resolve a conflict in the evidentiary record.

The existence of a statutory disability depends on a claimant's ability or inability to work during the relevant time period. Fedore v. Colvin, 2013 WL 4479027, at *6 (W.D. Pa. Aug. 19, 2013)(*citing* Barnhart v. Walton, 535 U.S.

212, 214-225 (2002)). Here, plaintiff alleges an onset date of June 6, 2008, and the hospitalization he believes Dr. Cunningham and the ALJ should have addressed took place in 1998. Plaintiff has not provided any documentation of or medical records from his hospitalization. He also does not indicate how the hospitalization nearly a decade before the alleged onset date is relevant to the determination of his RFC or whether he had a disability from June 2008 through the date of the hearing in April 2011. See Fedore, 2013 WL 4479027 at *6 (finding that hospitalizations that occurred several years before the alleged onset date are not relevant).

While Dr. Cunningham was incorrect in claiming that plaintiff had no psychiatric hospitalizations, and the better practice would have been for the ALJ to have noted that the record indicated that plaintiff had been hospitalized in her decision, these errors are not material here and do not demonstrate that the ALJ's decision was not supported by substantial evidence. The hospitalization in 1998 is too remote from the period of disability to be relevant to the validity of Dr. Cunningham's or the ALJ's opinion. The ALJ's decision to grant substantial weight to Dr. Cunningham's opinions is supported by the medical evidence of record and the record as a whole. The court therefore does not find that the error is material, and finds that the ALJ's decision to grant weight to Dr. Cunningham's opinion is supported by substantial evidence.

B.  Plaintiff's Rhabdomyolysis

Plaintiff next argues that the ALJ erred in finding that plaintiff's rhabdomyolysis was non-severe because she did not address the evidence of claimant's pain and did not obtain a medical opinion showing that the rhabdomyolysis would only have a minimum effect on his ability to perform basic work.

Plaintiff has the burden of establishing that he is disabled within the meaning of the act. 42 U.S.C. §423(d)(1)(A). While an ALJ has a duty to develop a full and fair record, Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995), she does not have an obligation to seek additional information when she has a full administrative record that does not have apparent gaps. Johnson v. Colvin, 2013 WL 4517857, at *12 (D.N.J. Aug. 23, 2013)(*citing* Roas v. Callahan, 168 F.3d 72, 79, n.5 (2d Cir. 1999)). When an applicant for social security benefits is represented by counsel, the ALJ "is entitled to assume that he is making his strongest case for benefits." Batts v. Barnhart, 2002 WL 32345745, at *8 (E.D. Pa. Mar. 29, 2002)(*citing* Glenn v. Sec. of Health and Human Serv., 814 F.2d 387, 391 (7th Cir. 1987)).

A severity determination is based solely on medical factors affecting a claimant's ability to perform basic work activities, and a claimant must show that his medically determinable impairment limits his ability to perform basic work activities. Colavito v. Apfel, 75 F.Supp. 2d 385, 400 (E.D. Pa. 1999). Basic work activities include walking, standing, sitting, lifting, and understanding and

13

carrying out simple instructions. Id.

Here, the ALJ's determination was supported by substantial evidence, because the plaintiff has failed to show that the rhabdomyolysis impairs his ability to do basic work activity. The record contains evidence that plaintiff undergoes regular blood testing, and plaintiff testified that the rhabdomyolysis causes him pain. The records from Dr. Betts, however, do not indicate that plaintiff receives any specialized medication or treatment for his rhabdomyolysis, although they do reflect some back and joint pain. In fact, Dr. Betts' notes do not appear to even mention that plaintiff suffers from the disease, or indicate that it limits him. Plaintiff testified that he controls his rhabdomyolysis with diet and hydration, and that he does not take any medicine or receive other treatment for the pain. (Tr. 51). After the VE testimony, plaintiff said that he did not think he could do the jobs proposed by the VE because repetitive motions hurt his arms. (Tr. 55). But plaintiff's testimony reflects that he does housework, and does not find it difficult. (Tr. 48). He has trouble doing some of the more demanding labor required for the upkeep of the outside of the home, (Tr. 48), but there is no indication that he has trouble with basic work activities. There is no medical evidence on record that shows that plaintiff is unable to do repetitive motions or other work activity.

Moreover, the ALJ was not required to obtain more information or further opinions about plaintiff's rhabdomyolysis. Although the evidence regarding plaintiff's rhabdomyolysis is relatively slim, there is a complete record on the

14

matter. The ALJ asked various questions about the ailment, and allowed plaintiff's attorney to ask many more questions on the topic. The ALJ developed the record by specifically asking plaintiff's attorney where in the record the rhabdomyolysis is reflected, and plaintiff's attorney represented that plaintiff is "really just seeing a primary care doctor" and getting "periodic blood work" for the disease. (Tr. 34). At the end of the hearing, the ALJ also asked plaintiff's attorney whether there was more evidence or records to present, and the attorney responded that there may be more mental health records coming, but did not indicate that there was any further evidence of rhabdomyolysis treatment. (Tr. 56). Thus, there is no indication that the record on plaintiff's physical ailments is in need of supplementation. The ALJ developed a full and fair record on the matter, and given that the record has no apparent gaps, the ALJ was not obligated to seek out more information regarding the rhabdomyolysis.

Nor does the ALJ's opinion indicate that she failed to considered plaintiff's subjective complaints of pain. She notes that plaintiff indeed has the disease, that he gets blood testing every other month, and that he occasionally takes over the counter pain medication to manage it, reflecting an understanding that the disease causes pain which needs management. (Tr. 21). Her determination that it is non-severe rests not on an assumption that plaintiff is never in pain, but on the facts that plaintiff does not receive treatment or take medication and that the record is devoid of any medical evidence that plaintiff's rhabdomyolysis

prevents him from performing work activity. (Tr. 21). The ALJ's determination that plaintiff's rhabdomyolysis is non-severe is supported by substantial evidence.

C. Vocational Expert Testimony

Plaintiff finally contends that the hypothetical question posed to the VE was improper because the ALJ failed to include plaintiff's limitations caused by rhabdomyolysis and his need to take unscheduled breaks during the day. Plaintiff also contends that the VE's testimony does not constitute substantial evidence because the VE's testimony conflicts with the Dictionary of Occupational Titles ("DOT").

1. Hypothetical Question

A hypothetical question posed to a VE must reflect *"all* of a claimant's impairments" that are supported by the record. Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004)(*quoting* Podedworny v. Harris, 745 F.2d 210 (3d Cir. 1984)). However, an ALJ is not required to submit every *alleged* impairment to the VE. Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005). Instead, "the hypotheticals proposed must 'accurately portray' the claimant's impairments. Id.(*citing* Podedworny, 745 F.2d at 218).

Plaintiff argues that the ALJ should have included the limitations caused by plaintiff's rhabdomyolysis in the hypothetical question, specifically a

16

limitation regarding plaintiff's need to take unscheduled breaks. Here, the ALJ asked the following hypothetical question:

> "begin by assuming that we're talking about an individual of this claimant's age, education, and past work history. Further assume the individual's capable of performing a range of light work, does not involve detailed instructions; and is confined to simple and routine tasks that are self-paced in nature; with limited contact with the public and coworkers and few work changes."

(Tr. 53). As discussed above, the evidence of record does not support that plaintiff's rhabdomyolysis is a severe impairment, nor does it indicate that plaintiff is significantly limited by the disease in performing work functions. Nevertheless, the ALJ's hypothetical limited plaintiff to "light work," that is "self-paced." The "self-paced" limitation is clearly intended to account for plaintiff's demonstrated need to take unscheduled breaks while working.[3] The ALJ's hypothetical thus encompasses all of plaintiff's limitations supported by the record, and she was not required to add further restrictions for rhabdomyolysis beyond limiting plaintiff to light, self-paced work.

2. <u>VE Testimony and DOT</u>

Plaintiff also argues that the VE's testimony conflicts with the DOT. The VE responded to the ALJ's hypothetical that the jobs of assembler, packer, and

---

[3] It is unclear from the record whether plaintiff's need to take frequent breaks is a result of his mental impairments, physical impairments, or both. Regardless, the ALJ's inclusion of "self-paced" takes into account the need for breaks, whether caused by mental or physical issues.

17

folder would be suitable. Plaintiff objects to these proposed jobs because he contends they do not comport with the ALJ's hypothetical limitation of "self-paced." He contends that the DOT classifies these jobs as assembly-line or quota-driven, and thus conflicts with the VE's testimony.

If plaintiff has satisfied his burden on steps one through four of the disability determination process, the Secretary must demonstrate that there are jobs in the national economy that plaintiff can perform. Jesurum v. Sec. of U.S. Dept. of Health and Human Serv., 48 F.3d 114, 117 (3d Cir. 1995). ALJs rely primarily on the DOT and VEs for information about requirements of work in the national economy. SSR 00-4p, at *2. "The DOT lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." Id. at *3. "Occupational evidence provided by a VE generally should be consistent with the occupational information supplied by the DOT." Id. at *2.

If there is an apparent conflict between VE testimony and DOT information, the ALJ must receive a reasonable explanation for the discrepancy. Id. Work exists in the national economy "when there is a significant number of jobs (in one or more occupations)" that plaintiff can meet. 20 C.F.R. §404.1566(b). There is no general rule that "an unexplained conflict between a VE's testimony and the DOT necessarily requires reversal." Jones v. Barnhart, 364 F.3d 501, 506, n.6 (3d Cir. 2005)(*citing* Boone v. Barnhart, 353 F.3d 203 (3d Cir. 2003)). Where enumerated occupations are merely examples

of work the plaintiff is able to perform, and not a complete list, the conflict may be minor. *See* Jones, 246 F.3d, at 506; Rutherford v. Barnhart, 399 F.3d 546, 557 (3d. Cir 2005). Similarly, if there is a conflict as to some, but not all, of the occupations listed by the VE, the conflict does not require reversal. Jones, 246 F.3d, at 506.(*distinguishing* Boone, 353 F.3d, at 209); Rutherford, 399 F.3d, at 557.

Plaintiff contends that the discrepancy between the DOT and VE testimony was apparent, and brought to the ALJ's attention by plaintiff's testimony that "my experience with [the jobs listed by the VE] is it's pretty much rapid fire. And I mean it's assembly-line stuff." (Tr. 55).

Assuming that working on an assembly line or under a quota-driven system definitionally means that the work is not self-paced, as plaintiff contends, the ALJ was required to request an explanation of the apparent conflict between the VE's testimony and the DOT. The DOT description for assembler, DOT 706.684-022, indicates "Performs any combination of the following repetitive tasks on an assembly line," which could indicate a conflict with the ALJ's requirement that the work be "self-paced." Similarly, the description of a packing line worker, DOT 753.687-038, includes working as a "member of a conveyor line crew," which could again point to a conflict. Finally, the description of a laundry folder, DOT 369.687-018, does not reflect that the work would occur as part of an assembly line, or that the work requires that plaintiff fulfill a quota. However, it is not clear that this position can merely be

19

"self-paced." Even if it may be so, an explanation was required before the ALJ made a decision to rely upon the VE. SSR-00-4p. Since an unexplained conflict may exist in this the record does not support the ALJ's determination that there is work in the national economy that plaintiff can perform, the matter will be remanded to the Commissioner for further determination consistent with this memorandum.

## V. CONCLUSION

For the foregoing reasons, plaintiff's appeal of the Commissioner's decision, (Doc. No. 1), is **GRANTED**. A separate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**Date: January 22, 2014**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2012 MEMORANDA\12-2129-01.wpd